IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2009 AUG 18 AM 10: 12
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                DEPUTY

FLINT ROCK GLOBAL TAX-ADVANTAGED
FUND, LP,
         Plaintiff,

-vs-                                          Case No. A-09-CA-383-SS

RAHFCO GROWTH FUND, LP; WARD ONSA;
RANDALL K. HANSEN; VINCENT PUMA;
RAHFCO MANAGEMENT GROUP, LLC;
HUDSON PARTNERS NYC, LLC; and R.J.
O'BRIEN AND ASSOCIATES, LLC,
         Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically the Advisory to the Court [#29], wherein the Defendants request a clarification as to whether the Court's order issued on July 17, 2009 [#25] addresses the Rule(12)(b)(3) component of the Defendants' Motion to Dismiss. The Order was not intended to address the Rule (12)(b)(3) component, and did not purport to do so. Accordingly, the Court considers Defendants' 12(b)(3) motion in the following order.

Before the Court are the Defendants RAHFCO Growth Fund, LP, Ward Onsa, Randall Hensen, Vicent Puma, RAHFCO Management Group, LLC, and Hudson Partners NYC, LLC's (for the purposes of this order, collectively, "Defendants") Motion to Dismiss [#10], Plaintiff Flint Rock Global Tax-Advantaged Fund's ("Plaintiff") response thereto [#17], and Defendants' reply [#21].

Having considered the foregoing documents, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

## Background[1]

Plaintiff is a hedge fund that invested $5 million in RAHFCO Growth Fund, LP ("Fund II"). Orig. Pet. at ¶ 12. Fund II was to be managed exclusively by its General Partner, RAHFCO Management Group, LLC ("RAHFCO Management"). Defendant Randall Hansen ("Hansen") created and controls Fund II, and is the manager of RAHFCO Management. Defendant Hudson Partners NYC, LLC ("Hudson Partners") was engaged to trade the assets of Fund II. *Id.* at ¶ 13.

According to Plaintiff, Plaintiff's representatives first began discussing a potential investment in Fund II with Hansen in mid-2008. *Id.* at ¶ 13. Plaintiff's understanding of Fund II's investment strategy was apparently based on its familiarity with another RAHFCO fund created by Hansen ("Fund I"), which Plaintiff understood had generated solid returns in the past. *Id.* at ¶ 14. Plaintiff was familiar with the fact that Defendants Ward Onsa ("Onsa") and Victor Puma ("Puma") allegedly did the trading for Fund I. *Id.* at ¶¶ 13-15. Hansen allegedly explained to Plaintiff that although Fund I was closed, Onsa and Puma had formed an advisory firm—Hudson Partners—with which both Fund I and Fund II contracted for portfolio management, and Hudson Partners would employ "exactly the same trading techniques" in Fund II as they did in Fund I. *Id.* at ¶¶ 15-17.

In July of 2008, after several meetings and "based upon the...meetings, conversations, and representations," Plaintiff invested $5 million into Fund II. In connection with the investment, Plaintiff executed a Limited Partnership Agreement and "subscription documents" with Defendants.

---

[1] The following is taken in large part from Plaintiff's original petition, and thus represents Plaintiff's allegations of fact.

*Id.* at ¶¶ 19-20. However, sometime thereafter, Plaintiff began receiving statements indicating Fund II was held in a segregated account at R.J. O'Brien and Associates, LLC ("O'Brien"). *Id.* at ¶ 22. Plaintiff inquired about excessive commissions it appeared O'Brien was charging against Plaintiff's account—which Plaintiff claims were "at least six times the industry-average commission for S&P options", *id.* at ¶ 26—but Plaintiff was reassured by Hansen, Onsa, and Puma that they preferred to use O'Brien and that O'Brien was "part of [their] team." *Id.* at ¶ 23.

Upon closing the July 2008 positions, Onsa contacted Plaintiff and apologized for achieving a loss in Plaintiff's investment. *Id.* at ¶ 24. He reassured Plaintiff that the returns were an anomaly, and that later months would bring superior returns as promised. *Id.* Plaintiff claims Onsa did not disclose that Onsa was utilizing different trading strategies with Plaintiff's investment than he employed for Fund I or the other investors in Fund II. *Id.* at ¶ 27.

After noticing the high commissions charged by O'Brien and the high volatility and trading volume of its account, Plaintiff withdrew $3 million from Fund II on August 26, 2008. *Id.* at ¶ 29. On September 23, 2008, after continued losses, Plaintiff redeemed its remaining investment. *Id.* at ¶ 30. Plaintiff sustained a capital loss of $1,275,837.50. *Id.* Plaintiff claims Defendants utilized different trading strategies on Plaintiff's investment than they utilized for Fund I or the other investors in Fund II, and that O'Brien charged $459,454.40 in commissions that were excessive and unreasonable—neither of which was disclosed to Plaintiff prior to its investing in Fund II. *Id.* at ¶ 31.

Based on the foregoing facts, Plaintiff sued Defendants for breach of fiduciary duty, fraud, and conspiracy in Travis County, Texas state district court in April of 2009. Defendants removed the case to this Court in May of 2009 on the basis of diversity of citizenship.

## Analysis

### I.     Legal Standard for Rule 12(b)(3) Dismissal

Defendants move to dismiss the case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that venue in that court is proper. *Bigham v. Envirocare of Utah, Inc.*, 123 F.Supp.2d 1046, 1048 (S.D. Tex. 2000); *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F.Supp. 455, 458 (S.D. Tex. 1996). If there is no evidentiary hearing, courts allow a plaintiff to satisfy the burden by showing facts that, taken as true, establish venue. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (unpublished) ( "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."). The Court will therefore accept undisputed facts in Plaintiff's pleadings as true and resolve factual conflicts in Plaintiff's favor. The Court is permitted, however, to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments. *Lane ex rel. Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### II.    Discussion

Defendants claim the parties entered into a Subscription Agreement (Exhibit B to the Private Placement Memorandum, or "PPM") and Limited Partnership Agreement ("LPA") in July of 2008, when Plaintiff initially decided to invest in Fund II.[2] These documents, according to Defendants, "set forth the representations made by the parties and the specifics concerning an investment in [Fund II]." Defs.' Mot. Dismiss [#10] at ¶ 4; Affidavit of Richard Babnick, Jr. ("Babnick Aff.").

---

[2]Plaintiff does not dispute this assertion, and in fact refers to the documents in its petition. *See* Orig. Pet. at ¶¶ 19-20.

-4-

Defendants also claim the Subscription Agreement and the LPA each explicitly provide that New York is the exclusive venue for disputes between the parties. *Id.* at ¶ 19. Specifically, the Subscription Agreement provides:

> The parties irrevocably consent to being served with legal process issued from the state and federal courts located in New York and irrevocably consent to the exclusive personal jurisdiction of the federal and state courts situated in the State of New York. The parties irrevocably waive any objections to the personal jurisdiction of these courts. ***Said courts shall have sole and exclusive jurisdiction over any and all claims, controversies, disputes and actions which in any way relate to this agreement or the subject matter of this agreement.*** The parties also irrevocably waive any objections that these courts constitute an oppressive, unfair, or inconvenient forum and agree not to seek change of venue on these grounds or any other grounds.

Babnick Aff. at Ex A, ¶ 14 (emphasis added). The LPA contains an identical provision. *Id.* at Ex. B, § 14.05. Based on the foregoing clause, Defendants move to dismiss this case for improper venue.

### A.   General Standards for the Enforceability of Forum Selection Clauses

Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). Under federal law, forum selection clauses are presumed valid and are generally enforced. *M/S Bremen v. Zapata Off-Shore Co*, 407 U.S. 1, 10, 15 (1972) ("*The Bremen*"); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95 (1991).[3] The Fifth Circuit has consistently followed this rule. *See Haynsworth*, 121 F.3d at 962; *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). The presumption of enforceability may be overcome, however, if the opposing party

---

[3]Although *The Bremen* was an admiralty case, courts have applied its holdings in other contexts. *See, e.g., Seattle-First National Bank v. Manges*, 900 F.2d 795, 799 (5th Cir. 1990) (citing *The Bremen*, 407 U.S. at 15).

shows that enforcement of the clause would be "unreasonable" or "fundamentally unfair" under the circumstances. *Kevlin Servs., Inc.*, 46 F.3d at 15 (citing *The Bremen*, 407 U.S. at 10).

Unreasonableness may exist if any one of the following conditions is present: (1) the inclusion of the forum selection clause into the written contract was the product of fraud or overreaching; (2) the party opposing enforcement of the clause "will for all practical purposes be deprived of his day in court" because of the extreme inconvenience or unfairness of the forum specified in the clause; (3) the law specified in the clause is fundamentally unfair and will cause the plaintiff to be deprived of a remedy; or (4) enforcement of the clause would go against a strong public policy of the forum state. *Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines*, 499 U.S. at 595; *The Bremen*, 407 U.S. at 12-13). The party opposed to the enforcement of the clause, and attempting to establish one of these grounds, bears a "heavy burden of proof." *Id.* (citing *The Bremen*, 407 U.S. at 17).

### B.   Application to the Present Case

As an initial matter, before a court can consider the enforcement of a forum selection clause, it must first determine whether the clause applies to the type of claims asserted in the lawsuit. *Braspetro Oil Servs. Co.*, 240 Fed. Appx. at 616 (citations omitted). The forum selection clause in both the Subscription Agreement and the LPA grants exclusive jurisdiction to New York courts "over any and all claims, controversies, disputes and actions which in any way relate to this agreement or the subject matter of this agreement." Babnick Aff. at Ex A, ¶ 14; Ex. B, § 14.05. The broad language of the clause leaves little room for an argument that the clause does not cover the claims in this case; wisely, Plaintiff refrains from making such an argument. *See* Pl.'s Resp. [#17] at 6. The Court finds the language of the forum selection clause undoubtedly includes the claims at issue in

this case, which directly stem from the relationship between the parties that was memorialized in the Subscription Agreement and the LPA.

Regardless of the fact the claims are covered under the broad terms of the forum selection clause, Plaintiff argues enforcement of the clause is nevertheless unreasonable in this case because "[a] forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." Pl.'s Resp. at 6 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)). However, it is essential to note that "[f]raud and overreaching must be specific to a forum selection clause in order to invalidate it." *Haynsworth*, 121 F.3d at 963. In other words, as the Supreme Court held in *Scherk*, *The Bremen's* exception for unreasonable fraud or overreaching:

> ...does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the **inclusion of that clause in the contract** was the product of fraud or coercion.

*Scherk*, 417 U.S. at 519 n.14. (emphasis in original) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). In other words, "allegations of such conduct as to the contract as a whole—or portions of it other than the [forum selection] clause—are insufficient; the claims of fraud or overreaching must be aimed straight at the [forum selection] clause in order to succeed." *Haynsworth*, 121 F.3d at 963 (citations omitted).

Plaintiff claims the forum selection clause in this case should not be enforced because during the course of the negotiations between the parties, "Defendants made a point of assuring [Plaintiff] that the parties' business would be settled in Texas and that Onsa would travel to Austin a certain number of days per month to conduct Fund business in [Plaintiff]'s office[.]" Pl.'s Resp. at 6. Based

on this bare allegation, Plaintiff concludes that Defendants' fraudulent activities were "aimed specifically at inducing [Plaintiff] to agree to the forum selection clause," and that therefore enforcement of the clause is unreasonable. *Id.*

The Court does not agree. Plaintiff's conclusory assertion that Defendants "aimed specifically" at inducing them to agree to a forum selection clause is vastly insufficient to support a finding that enforcement of the clause is unreasonable under the circumstances. Indeed, Plaintiff's only specific allegation—that Defendants made a point of assuring Plaintiff the parties' business would be settled in Texas and that Onsa would travel to Austin a certain number of days per month to conduct Fund business in Plaintiff's office—does not even relate to the forum selection clause. It relates only to the business between the parties, which was indeed conducted in Texas, and the "fund business;" the statement was not, and did not purport to be, about the issue of where potential litigation arising out of the agreements would be conducted. In short, the allegation (even if true) is not germane to the issue of the forum selection clause's enforceability. Plaintiff makes no specific assertion regarding any fraudulent statement made about the forum selection clause in particular, or relating in any way to its inclusion in the two agreements signed by Plaintiff.

In *Haynsworth*, the Fifth Circuit considered a situation similar to the present case. The plaintiffs in *Haynsworth* alleged fraud, breach of fiduciary duty, and violations of several Texas statutes based on the defendants' alleged efforts to induce the plaintiffs to underwrite high-risk insurance policies. 121 F.3d at 960-61. As here, the alleged fraudulent acts underlying the claims in *Haynsworth* occurred before the parties entered into the agreement with the forum selection clause. *Id.* at 963-64. The district court enforced the forum selection clause; on appeal, the plaintiffs asserted the defendants made certain misrepresentations to lure them into agreeing to the forum

-8-

selection clause, and that they entered into the agreements based on the alleged fraud. *Id.* The Fifth Circuit rejected that argument, holding that any misrepresentations that were made related to the contract as a whole. *Id.* at 963. The Fifth Circuit held "whatever misrepresentations might have been made were 'related to the entirety' of the new agreement and therefore were insufficient to block enforcement of the clause." *Id.* at 964 (citing *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987)). Furthermore, the court admonished the plaintiffs:

> ...the plaintiffs are presumed to have known what the [forum selection] clause said. The plaintiffs were sophisticated parties contracting voluntarily; it is not for us to impose a duty upon one party to counsel the other as to the risks and benefits of a contract. Indeed, as [the defendant] points out, there was nothing to explain. The duty was the plaintiffs' to read the plain terms of the agreement, not [the defendant]'s to lecture them about it.

*Id.* at 965.

The present case presents facts that—if anything—are even less compelling than those presented by the plaintiffs in *Haynesworth*. Even if the Defendants in this case did assure Plaintiff the parties' business would be settled in Texas and that Onsa would travel to Austin a certain number of days per month to conduct Fund business in Plaintiff's office, this representation went to the entire agreement between the parties. It related to *all* of their business together, even according to Plaintiff, and was not a specific representation about the forum for possible litigation. Furthermore, even in the face of that general representation, Plaintiff is presumed to have known what it agreed to when it signed multiple agreements containing the same explicit forum selection clause.

In short, Plaintiff has made no showing or allegation which convinces the Court enforcement of the forum selection clause is unreasonable, and venue is therefore proper in this court. The Court finds the forum selection clause is valid and enforceable, and that the case must therefore be

dismissed. *See Int'l Software Sys., Inc. v. Amplicaon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996) (holding that where a contract contains a valid forum selection clause and a party files the case in an improper forum, dismissal of the case is appropriate).

## Conclusion

In accordance with the foregoing,

IT IS ORDERED that the Defendants RAHFCO Growth Fund, LP, Ward Onsa, Randall Hensen, Vicent Puma, RAHFCO Management Group, LLC, and Hudson Partners NYC, LLC's Motion to Dismiss [#10] is GRANTED.

IT IS FURTHER ORDERED that ALL PENDING MOTIONS are dismissed as moot.

SIGNED this the 17th day of August 2009.

SAM SPARKS
UNITED STATES DISTRICT JUDGE